IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JANE DOE, | ) | CV. NO. 08-00517 BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING |
| | ) | DEFENDANTS' MOTION TO |
| vs. | ) | DISMISS PLAINTIFF'S SECOND |
| | ) | AMENDED COMPLAINT |
| UNITED STATES OF AMERICA; | ) | |
| JEFFREY KALANI CRUZ; and | ) | |
| DOE DEFENDANTS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT

Before the Court is Defendants United States of America and Jeffrey

Kalani Cruz's (collectively "Defendants") Motion to Dismiss Plaintiff Jane Doe's

("Plaintiff") Second Amended Complaint ("SAC"). (Doc. # 79.) The Court heard

the motion on January 7, 2011. After careful consideration of the motion, the

supporting and opposing memoranda, and the arguments of counsel, Defendants'

Motion to Dismiss Plaintiff's SAC is GRANTED.

BACKGROUND

This action arises out of a sexual assault on Plaintiff while she was an

inmate at the Federal Detention Center in Honolulu, Hawaii (the "FDC"). (SAC

¶¶ 5, 14.) The sexual assault was committed by Markell Milsap ("Milsap"), who

was employed as an electrician by the United States of America (the "United States") and the Federal Bureau of Prisons (the "BOP"). (Id. ¶¶ 6, 14.) Plaintiff filed suit against Milsap and the United States on November 18, 2008. (Doc. # 1.) On September 18, 2009, Plaintiff and Milsap entered into a settlement and release agreement. (Doc. # 36 at 9-10.) Milsap was dismissed from the action pursuant to a stipulation for dismissal filed on November 12, 2009. (Doc. # 35.)

On February 26, 2010, the United States moved to dismiss the remaining claims in the action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 48.) The remaining claims were against the United States for the following: the conduct of Milsap while he was acting within the scope of his employment (Count I); negligent supervision of Milsap (Count II); negligent hiring and/or retention of Milsap (Count III); negligent supervision of the inmate population (Count IV); negligent failure to equip and staff the FDC (Count V); and negligent infliction of emotional distress (Count IX). The Court heard the United States' motion on April 15, 2010, and on May 10, 2010, the Court issued an order granting the motion. (Doc. # 55.) Specifically, the Court dismissed Counts I and V for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (Id. at 18.) The Court dismissed Counts II, III, and IV for failure to state a claim upon which relief may be granted pursuant to

Rule 12(b)(6). (Id.) Lastly, because Plaintiff did not dispute the United States'
argument that Count IX was a claim for damages rather than an independent cause
of action, the Court dismissed this count on the ground that all other claims against
the United States were being dismissed. (Id. at 17-18.) The Court, however,
granted Plaintiff leave to amend Counts II, III, and IV of her complaint. (Id. at 18.)

Plaintiff amended her complaint on May 25, 2010. (Doc. # 56.) On
October 22, 2010, the parties stipulated to the filing of a second amended
complaint. (Doc. # 77.) Plaintiff filed her SAC on November 3, 2010.
(Doc. # 78.) The SAC names as Defendants the United States, Jeffrey Kalani Cruz
("Cruz"), and Doe Defendants. (Id.) In addition to the facts stated above, the SAC
alleges the following. The SAC alleges that on or about September 27, 2007,
Plaintiff was working in the FDC's visiting room when the floor buffer machine
she was using (the "buffer machine") blew up and burned her stomach. (SAC ¶ 7.)
The SAC alleges that the following day, Milsap received a work order to fix the
buffer machine. (Id. ¶ 8.) The SAC states that Milsap went to Plaintiff's jail cell
and demanded to see her injuries. (Id. ¶ 9.) The SAC maintains that Plaintiff
refused. (Id. ¶ 10.) The SAC alleges that Milsap then instructed Cruz, who was
employed as an officer by the United States and the BOP, to open Plaintiff's jail
cell for the purpose of taking her to identify the buffer machine. (Id. ¶¶ 6, 10.)

The SAC alleges that Cruz complied.  (Id. ¶ 11.)  The SAC alleges that Cruz

opened Plaintiff's jail cell and escorted Plaintiff and Milsap to a closet (the

"closet") where the buffer machine was located.  (Id.)  The SAC alleges that the

closet was locked and had no cameras inside.  (Id. ¶¶ 10, 11.)  The SAC asserts that

Cruz unlocked and opened the closet door, and allowed Plaintiff and Milsap to

enter the closet.  (Id. ¶ 12.)  The SAC alleges that once Plaintiff and Milsap were

inside the closet, Cruz allowed the door to automatically shut, leaving Plaintiff and

Milsap in the closet alone.  (Id. ¶¶ 12, 13.)  The SAC alleges that Milsap then

sexually assaulted Plaintiff and threatened her and her family members.  (Id. ¶ 14.)

      The SAC asserts seven claims against Defendants.  Count I asserts a

claim against Cruz and Doe Defendants for violation of Plaintiff's federal civil

rights.  (Id. ¶ 22.)  Counts II through VII assert claims against the United States for

negligent hiring, training, and/or retention of Milsap (Count II); negligent

supervision of Milsap (Count III); negligent hiring, training, and/or retention of

Cruz (Count IV); negligent supervision of Cruz (Count V); negligent supervision

of the inmate population (Count VI); and negligent infliction of emotional distress

(Count VII).  (Id. ¶¶ 24, 26, 28, 30, 32, 34.)

      On November 5, 2010, Defendants filed their Motion to Dismiss

Plaintiff's SAC.  (Doc. # 79.)  In their motion, Defendants move to dismiss Counts

III, V, and VI for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (Mem. in Supp. of Mot. at 10-13, 14-16.) Defendants move to dismiss Counts I, II, and IV for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). (Id. at 5-10.) Lastly, Defendants move to dismiss Count VII on the ground that it is not an independent cause of action, but rather, a claim for damages. (Id. at 16.)

Plaintiff filed her opposition to Defendants' motion on December 17, 2010. (Doc. # 87.) She attached as exhibits to her opposition excerpts from her responses to the United States' First Request for Answers to Interrogatories; a transcript of the Federal Bureau of Investigation's (the "FBI") interview of Cruz; excerpts from the BOP Program Statement's Standards of Employee Conduct (the "Program Statement"); and a complaint filed against the United States and others in an unrelated action, by a female inmate who was sexually assaulted by a BOP employee. (Seitz Aff. ¶¶ 2-5; Mot. Exs. 1-4.) Defendants filed their reply to Plaintiff's opposition on December 23, 2010. (Doc. # 89.)

On January 5, 2011, the parties stipulated to the Court's consideration of the deposition testimony of Cruz, Milsap, and Plaintiff when deciding the instant motion. (Doc. # 92.) Their deposition transcripts were filed later that day.

(Docs. ## 91, 93.)

## STANDARD OF REVIEW

A.    Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges the court's subject matter jurisdiction over the claims asserted.  Fed. R. Civ. P. 12(b)(1).  "The objection that a federal court lacks subject matter jurisdiction . . . may be raised by a party, or by a court on its own initiative, at any stage in the litigation . . . ."  Arbaugh v. Y & H Corp., 546 U.S. 500, 506 (2006) (citation omitted).  "[A] Rule 12(b)(1) motion can attack the substance of a complaint's jurisdictional allegations despite their formal sufficiency, and in so doing rely on affidavits or any other evidence properly before the court."  St. Clair v. City of Chico, 880 F.2d 199, 201 (9th Cir. 1989).  The plaintiff must then "present affidavits or any other evidence necessary to satisfy [her] burden of establishing that the court, in fact, possesses subject matter jurisdiction."  Id.  The plaintiff bears the burden of proving that jurisdiction exists.  Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979) (citation and quotation marks omitted).

B.    Rule 12(b)(6)

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."  Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  A complaint may

be dismissed as a matter of law for two reasons:  (1) lack of a cognizable legal theory or (2) insufficient facts alleged to support a cognizable theory.  Id. (citing Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990)).  Because a Rule 12(b)(6) motion to dismiss focuses on the sufficiency of a claim statement, review is generally limited to the face of the complaint.  Lee v. City of Los Angeles, 250 F.3d 668, 688 (9th Cir. 2001) (citation omitted); Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir. 1994) (citations omitted).  The court must accept all allegations of material fact as true and construe them in a light most favorable to the nonmoving party.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  The court, however, need not accept as true conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences.  Id.

As to the plaintiff's pleading burden, the Supreme Court has held that while a complaint "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, --- U.S. ---, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555.  Thus, to survive a Rule 12(b)(6) motion to dismiss, a complaint must

7

contain "enough facts to state a claim to relief that is plausible on its face." Id. at

570. A claim is plausible on its face "when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556).

      If either party to a Rule 12(b)(6) motion to dismiss presents materials

outside of the pleadings in support of or in opposition to the motion, and the court

relies on those materials, the motion to dismiss must be treated as a motion for

summary judgment under Rule 56. Fed. R. Civ. P. 12(d); Anderson v. Angelone,

86 F.3d 932, 934 (9th Cir. 1996) (citations omitted). "All parties must be given a

reasonable opportunity to present all the material that is pertinent to the motion."

Fed. R. Civ. P. 12(d).

C.     Rule 56

      Under Rule 56, the court shall grant summary judgment where there is

no genuine issue as to any material fact, and the undisputed facts warrant judgment

for the moving party as a matter of law. See Fed. R. Civ. P. 56. Summary

judgment is mandated "against a party who fails to make a showing sufficient to

establish the existence of an element essential to that party's case, and on which

that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S.

317, 322 (1986). A "genuine issue" exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986) (quotation marks omitted). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law . . . ." <u>Id.</u> When considering the evidence on a motion for summary judgment, the court must draw all inferences in the light most favorable to the nonmoving party. <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (citation omitted).

DISCUSSION

A.    <u>Lack of Subject Matter Jurisdiction</u>

As mentioned above, Counts III and V assert claims against the United States for negligent supervision of Milsap and Cruz, respectively. (SAC ¶¶ 26, 30.) Count VI asserts a claim against the United States for negligent supervision of the inmate population. (<u>Id.</u> ¶ 32.) Defendants move to dismiss these counts for lack of subject matter jurisdiction pursuant to the discretionary function exception to the Federal Tort Claims Act (the "FTCA"). (Mem. in Supp. of Mot. at 10-13, 14-16.)

"Sovereign immunity is an important limitation on the subject matter jurisdiction of federal courts." <u>Vacek v. U.S. Postal Serv.</u>, 447 F.3d 1248, 1250 (9th Cir. 2006). "The United States, as sovereign, can only be sued to the extent it

has waived its sovereign immunity." Id.  The FTCA is such a waiver.  Foster v. United States, 522 F.3d 1071, 1074 (9th Cir. 2008).  It authorizes suits against the Government for personal injury caused by the negligence of its employees while acting within the scope of their employment.  28 U.S.C. § 1346(b)(1).  In those cases, the Government is held liable "in the same manner and to the same extent as a private individual under like circumstances . . . ."  28 U.S.C. § 2674.  This waiver, however, is limited.  Alfrey v. United States, 276 F.3d 557, 561 (9th Cir. 2002) (citation omitted).  Title 28 U.S.C. § 2680(a) provides that the FTCA does not waive immunity for any claim that is "based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."  The discretionary function exception to the FTCA "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals."  Berkovitz v. United States, 486 U.S. 531, 536 (1988) (quoting United States v. Varig Airlines, 467 U.S. 797, 808 (1984)) (quotation marks omitted).

      To determine whether the discretionary function exception bars a particular claim, the court must apply a two-part test.  Alfrey, 276 F.3d at 561

10

(citing Sigman v. United States, 217 F.3d 785, 793 (9th Cir. 2000)).  First, the

court must decide "whether the challenged conduct is discretionary, that is,

whether it 'involv[es] an element of judgment or choice.'"  Id. (quoting Fang v.

United States, 140 F.3d 1238, 1241 (9th Cir. 1998)) (alteration in original).  This

requirement is not met if "a federal statute, regulation or policy specifically

prescribes a course of action for an employee to follow."  Id. (quoting Fang,

140 F.3d at 1241) (quotation marks omitted).

Second, if the challenged conduct is discretionary, the court "must

determine whether that judgment is of the kind that the discretionary function

exception was designed to shield."  Id. (quoting Berkovitz, 486 U.S. at 536)

(quotation marks omitted).  The purpose of the discretionary function exception is

to "prevent judicial second-guessing of legislative and administrative decisions

grounded in social, economic, and political policy through the medium of an action

in tort."  Berkovitz, 486 U.S. at 536-37 (quoting Varig Airlines, 467 U.S. at 814)

(quotation marks omitted).  Thus, the discretionary function exception protects

only governmental decisions that involve considerations of public policy.  Id. at

537.  "It is not necessary for the [G]overnment to prove a conscious decision based

on a policy analysis."  Weissich v. United States, 4 F.3d 810, 813 (9th Cir. 1993)

(citation omitted).  "It is enough that the choice is one to which a policy analysis

may apply." Id. (citation omitted).

If the discretionary function exception applies to a particular claim, the court lacks subject matter jurisdiction over that claim and the claim must be dismissed. Bibeau v. Pac. Nw. Research Found., Inc., 339 F.3d 942, 945 (9th Cir. 2003); see also Mundy v. United States, 983 F.2d 950, 952 (9th Cir. 1993). While the burden of proving the applicability of the discretionary function exception falls on the Government, the "plaintiff must advance a claim that is facially outside the discretionary function exception in order to survive a motion to dismiss." Doe v. Holy See, 557 F.3d 1066, 1084 (9th Cir. 2009) (quoting Prescott v. United States, 973 F.2d 696, 702 & n.4 (9th Cir. 1992)) (quotation marks omitted).

1.    Negligent supervision of Milsap and Cruz (Counts III and V)

Counts III and V allege that the United States negligently supervised Milsap and Cruz. (SAC ¶¶ 26, 30.) Applying the first prong of the two-part test, Plaintiff fails to point to any federal statute, regulation, or policy that specifically prescribes a course of action with respect to the supervision of employees. Furthermore, courts have held that decisions relating to the supervision of employees are discretionary. See Doe, 557 F.3d at 1084 (noting that the Ninth Circuit has "held the . . . supervision . . . of employees to be discretionary acts");

Nurse v. United States, 226 F.3d 996, 1001 (9th Cir. 2000) (noting that claims for negligent supervision "fall squarely within the discretionary function exception"); Burkhart v. Wash. Metro. Area Transit Auth., 112 F.3d 1207, 1217 (D.C. Cir. 1997) (holding that decisions concerning the supervision of employees are discretionary in nature and therefore, immune from judicial review); Attallah v. United States, 955 F.2d 776, 784 (1st Cir. 1992) (noting that "how, and to what extent the [United States] Customs Service supervises its employees certainly involves a degree of discretion").  As to the second prong, courts have also held that the manner in which the United States supervises its employees involves the types of judgment that the discretionary function exception was designed to shield. See Doe, 557 F.3d at 1084 (holding that the decision of how to supervise an employee is the type of judgment that the discretionary function exception was designed to protect); Vickers v. United States, 228 F.3d 944, 950 (9th Cir. 2000) (noting that courts "have held that decisions relating to the . . . supervision of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield"); Burkhart, 112 F.3d at 1217 (holding that "supervision choices . . . are choices susceptible to policy judgment") (quotation marks omitted); Tonelli v. United States, 60 F.3d 492, 496 (8th Cir. 1995) (noting that "[i]ssues of employee supervision . . . generally involve the

permissible exercise of policy judgment and fall within the discretionary function exception."); <u>Attallah</u>, 955 F.2d at 784 (noting that "how, and to what extent the [United States] Customs Service supervises its employees certainly involves . . . policy considerations of the kind that Congress sought to protect through the discretionary function exception").

Based on the foregoing, the Court concludes that Plaintiff's claims against the United States for negligent supervision of Milsap and Cruz are barred by the discretionary function exception. Accordingly, Defendants' motion is GRANTED with respect to Counts III and V for lack of subject matter jurisdiction.

2. <u>Negligent supervision of the inmate population (Count VI)</u>

Count VI alleges that the United States negligently supervised the inmate population to ensure the safety of inmates. (SAC ¶ 32.) As to the first prong–whether the challenged conduct is discretionary–Plaintiff argues that the Program Statement requires that employees "remain fully alert and attentive during duty hours." (Opp'n at 9-10; Opp'n Ex. 3 at 9.) However, to the extent this imposes upon employees a general duty of "responsiveness," it sets forth no particular course of action for employees to follow. Plaintiff argues that the Program Statement also provides that "[a]n employee may not engage in, or allow another person to engage in, sexual behavior with an inmate." (Opp'n at 9; Opp'n

Ex. 3 at 8.)  However, this does not govern the conduct that forms the basis for this claim, which is, allowing an inmate to go into an unsupervised area alone with an employee.  Plaintiff does not point to any federal statute, regulation, or policy, which imposes upon employees clear duties as to the supervision of inmates.  The Court therefore concludes that the supervision of inmates is discretionary.

As to the second prong, the Court concludes that decisions concerning inmate supervision are of the kind the discretionary function exception was designed to protect.  Such decisions are based upon public policy considerations, including the need to safeguard inmates, preserve internal order, and maintain institutional security.  See Dykstra v. U.S. Bureau of Prisons, 140 F.3d 791, 796 (8th Cir. 1998) (noting that "[p]rison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors[,]" which "are inherently grounded in social, political, and economic policy"); Calderon v. United States, 123 F.3d 947, 951 (7th Cir. 1997) (holding that "balancing the need to provide inmate security with the rights of the inmates to circulate and socialize within the prison involves considerations based upon public policy"); Sears v. United States, No. C04-2511-RSM-JPD, 2007 WL 527500, at *7 (W.D. Wash. Feb. 14, 2007) (noting that decisions as to inmate security "necessarily implicate Congress' policy decision to allow the BOP to choose the

appropriate means of supervising and protecting inmates"); <u>Mitchell v. United States</u>, 149 F. Supp. 2d 1111, 1114 (D. Ariz. 1999) (holding that "[d]ecisions by governmental officials as to the day-to-day security needs of a prison, including the number of guards to employ to supervise a given area . . . are judgment calls and choices based on policy determinations that seek to accommodate safety [goals] and the reality of finite agency resources") (citation and quotation marks omitted, alteration in original).  The Court thus concludes that Plaintiff's claim against the United States for the negligent supervision of inmates is barred by the discretionary function exception.  As such, the United States' motion is GRANTED with respect to Count VI for lack of subject matter jurisdiction.

       3.    <u>Negligent hiring, training, and/or retention of Milsap and Cruz (Counts II and IV)</u>

       Counts II and IV allege that the United States negligently hired, trained, and/or retained Milsap and Cruz.  (SAC ¶¶ 24, 28.)  Although, Defendants do not raise the issue of subject matter jurisdiction with respect to these claims, the Court decides to address it.  It is well-established that jurisdictional defenses, such as the discretionary function exception, "cannot be waived by the parties and may be . . . raised by a court sua sponte."  <u>Prescott</u>, 973 F.2d at 701 n.2 (citations and quotation marks omitted); <u>see also</u> <u>Roberts v. United States</u>, 887 F.2d 899, 900 (9th Cir. 1989) (holding that the court must consider jurisdiction even if the parties

did not challenge it).

Turning to the two-part test, courts have held that decisions relating to the hiring, training, and retention of employees are discretionary.  See Doe, 557 F.3d at 1084 (noting that the Ninth Circuit has held the hiring, training, and retention of employees to be discretionary acts); Nurse, 226 F.3d at 1001 (noting that claims for negligent training "fall squarely within the discretionary function exception"); Burkhart, 112 F.3d at 1217 (holding that decisions concerning the hiring and training of employees are discretionary in nature and therefore, immune from judicial review).  In addition, such decisions have been held to be, at the very least, susceptible to a policy analysis.  See Vickers, 228 F.3d at 950 (noting that courts "have held that decisions relating to the hiring, training . . . of employees usually involve policy judgments of the type Congress intended the discretionary function exception to shield"); Tonelli, 60 F.3d at 496 (noting that "[p]ermitting FTCA claims involving negligent hiring would require [the] court to engage in the type of judicial second-guessing that Congress intended to avoid").  Based on the foregoing, the Court concludes that Plaintiff's claims against the United States for the negligent hiring, training, and/or retention of Milsap and Cruz fall within the discretionary function exception.  Accordingly, Counts II and IV are DISMISSED for lack of subject matter jurisdiction.

B.   Failure to State a Claim

1.   Biven's claim against Cruz (Count I)

As mentioned above, Count I asserts a claim against Cruz for violation of Plaintiff's federal civil rights.  (SAC ¶ 22.)  Defendants move to dismiss this count pursuant to Rule 12(b)(6) for failure to state a claim upon which relief may be granted.  (Mem. in Supp. of Mot. at 5-8.)  Specifically, Defendants argue that the SAC fails to plead facts sufficient to support a claim for relief under Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971).

Under Bivens, a plaintiff may sue a federal official in his individual capacity for damages for violation of the plaintiff's federal constitutional rights. Id. at 397.  In general, the law governing Bivens claims is the same as that governing § 1983 claims "save for the replacement of a state actor under § 1983 by a federal actor under Bivens."  Van Strum v. Lawn, 940 F.2d 406, 409 (9th Cir. 1991).  While, in this case, the SAC does not specify the right allegedly violated, Plaintiff, in her memorandum in opposition, contends it was her Eighth Amendment right to be free from cruel and unusual punishment.  (Opp'n at 5-8.)

The Eighth Amendment prohibition against cruel and unusual punishment imposes upon prison officials the duty to take reasonable steps to

guarantee the safety of inmates. <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)

(quoting <u>Hudson v. Palmer</u>, 468 U.S. 517, 526-27 (1984)). This duty is violated,

however, only where prison officials are deliberately indifferent to a substantial

risk of serious harm to the inmate. <u>Id.</u> at 828. The deliberate indifference standard

consists of both an objective and subjective prong. First, the alleged deprivation

must be, in objective terms, "sufficiently serious . . . ." <u>Id.</u> at 834 (quoting <u>Wilson</u>

<u>v. Seiter</u>, 501 U.S. 294, 298 (1991)) (quotation marks omitted). Second, the prison

official must possess a "sufficiently culpable state of mind." <u>Id.</u> (quoting <u>Wilson</u>,

501 U.S. at 297) (quotation marks omitted). In this case, it is the second prong on

which Defendants move for dismissal. (<u>See</u> Mem. in Supp. of Mot. at 6-8.)

A prison official possesses a sufficiently culpable state of mind if he

"knows of and disregards an excessive risk to inmate health or safety . . . ."

<u>Farmer</u>, 511 U.S. at 837. "[T]he official must both be aware of facts from which

the inference could be drawn that a substantial risk of serious harm exists, and he

must also draw the inference." <u>Id.</u> "If a [prison official] should have been aware

of the risk, but was not, then the [official] has not violated the Eighth Amendment,

no matter how severe the risk." <u>Toguchi v. Chung</u>, 391 F.3d 1051, 1057

(9th Cir. 2004) (quoting <u>Gibson v. County of Washoe, Nevada</u>, 290 F.3d 1175,

1187 (9th Cir. 2002)) (quotations marks omitted, alterations in original). Neither

negligence nor gross negligence is sufficient to establish a constitutional violation. Farmer, 511 U.S. at 835 (citation omitted); Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Plaintiff submitted, in opposition to Defendants' motion, a transcript of the FBI's interview of Cruz (the "interview transcript"). (Opp'n Ex. 2.) Shortly thereafter, the parties stipulated to the submission of Cruz's deposition transcript for the Court to consider when deciding the instant motion. (Doc. # 92.) Because the Court relies on the evidence submitted, the Court converts Defendants' motion to dismiss under Rule 12(b)(6) to a motion for summary judgment. Fed. R. Civ. P. 12(d); Anderson, 86 F.3d at 934 (citations omitted).

According to the interview transcript, Cruz was on duty on the FDC's lower tier on the day of the incident. (Opp'n Ex. 2 at 1.) Milsap was with two or three inmates ("male work crew") fixing the lights on the upper tier when he called down to Cruz and said, "A girl got shocked or burned the other day." (Id.) According to Cruz, Milsap said that the "girl" was Plaintiff. (Id.) Milsap asked Cruz "to bring [Plaintiff] out of her cell, because [he] needed to see the buffer [machine] that burned [her]." (Id.) Cruz stated that he unlocked Plaintiff's jail cell and escorted her and Milsap to the closet where the buffer machine was kept. (Id.) Cruz stated that he was the only person who had a key to unlock the outer door to

the closet.  (<u>Id.</u> at 2.)  He stated that he unlocked the outer door and Plaintiff and Milsap went into the closet.  (<u>Id.</u>)  Cruz stated that he waited outside the closet and watched over the male work crew.  (<u>Id.</u>)

Cruz stated that he did not feel that he had to accompany Plaintiff and Milsap into the closet.  (<u>Id.</u>)  He, however, recalled being told not to go into any room "off camera" with a female inmate, and stated that he would not have gone into the closet alone with a female inmate.  (<u>Id.</u>)  He stated that Plaintiff and Milsap exited the closet less than a minute after they entered.  (<u>Id.</u>)  He recalled that as they exited the closet, they were talking about the buffer machine.  (<u>Id.</u>)  Cruz stated that he escorted Plaintiff and Milsap back to Plaintiff's jail cell, and locked Plaintiff in her cell.  (<u>Id.</u>)  He stated that he had met Milsap on a tour of the FDC during an officer training class, but that this was the first time he worked with him. (<u>Id.</u>)

Cruz gave similar testimony during his deposition.  (Opp'n Ex. 5.)  He described the events on the day of the incident as follows:

> A.     Oh, what I can recall on that day was Mr. Milsap and his work line knocking on the door, telling me that he had to come in and change a few light bulbs. . . .
>
> They left their tool cart on the bottom tier, they went upstairs to change a few light bulbs on the second tier.  And then Mr. Milsap asked me if I knew anything about an inmate getting burned from a floor buffer, and which I told him no.  So,

he said [Plaintiff's name], and he wanted her to show him which floor buffer it was so he could fix it. So he asked . . . if I could bring her out of her cell and show him which floor buffer it was.

Q.      Okay, let me stop you at that point. First of all, how many people were on Mr. Milsap's work crew?

A.      There's–if I can recall, there was two or three.

. . .

Q.      In addition to Mr. Milsap, when they come into the unit, who supervises them?

A.      Me, the unit officer, or Mr. Milsap.

Q.      Was anybody else present at that time to supervise that work crew, other than you and Mr. Milsap?

A.      No.

. . .

Q.      So you took [Plaintiff] out of the cell. Did you say something to her at that point in time as to what was going on?

. . .

A.      I asked [Plaintiff] if she got burned from a floor buffer and if the machine was in the storage closet.

Q.      And what did she say?

A.      She said yes.

Q.      And then what happened after that?

22

A.    Then I escorted her around . . . .  We went down, I opened the closet door.  And I can't recall who went in first, either Milsap or [Plaintiff].

Then when they went in, I was holding the door open. . . . I thought they were going in to be real quick.  And at that point, Mr. Milsap asked me to supervise the male [work crew] for him.

Q.    Okay.  And so what did you do?

A.    So I let the door shut.  And at that time, my consideration was for the male [work crew].  Because, for one, they have a tool cart, which they can hide tools, take for contraband, weapons.  They could fight each other, and they could also pass contraband through to the female inmates which are in their cell.

Q.    Okay.  So did you step away from the immediate area where the door was in order to supervise them?

A.    Yes.

. . .

Q.    Okay.  So you left Mr. Milsap with [Plaintiff] inside the closed area, the storage area, is that correct?

A.    Yes.

Q.    Now, when you did that, did it ever occur to you that that was a dangerous situation for [Plaintiff]?

A.    No.  In training, we were strongly suggested as an employee not to go in an area with a female that there's no cameras.  But, being that Mr. Milsap is an employee of the Bureau of Prisons, I knew he went through the same training I did, so it was just a suggestion, strong suggestion, to be extra

23

cautious, to not go in an area like that.

. . .

Q.     Did it ever cross your mind at that point that [Plaintiff] was in danger, being in an unsupervised area with another staff member?

A.     No.

(Cruz Dep. 21:16-26:2, Dec. 20, 2010.)  Cruz testified that Plaintiff and Milsap exited the closet about a minute after they entered.  (Id. 26:3-27:2.)  He testified that when Plaintiff exited the closet, she did not appear to be upset or disturbed. (Id.  27:20-22; see also id. 27:7-8.)

Based on the evidence submitted by the parties, there is no indication that Cruz acted with a sufficiently culpable state of mind.  It is undisputed that Cruz brought Plaintiff out of her jail cell so that she could identify the buffer machine, which caused her injuries.  (SAC ¶¶ 10, 11; Opp'n Ex. 2 at 1; Cruz Dep. 22:2-6, 23:22-24:5.)  Cruz escorted Plaintiff and Milsap to the closet, because that was where the buffer machine was believed to be stored.  (SAC ¶¶ 10, 11; Opp'n Ex. 2 at 1-2; Cruz Dep. 24:2-11.)  While Plaintiff and Milsap were in the closet, Cruz remained outside to watch over the male work crew.  (Opp'n Ex. 2 at 2.; Cruz Dep. 24:16-25:3.)  Cruz was partially responsible for supervising the male work crew, and no other employee was present at the time to watch over them.

(Cruz Dep. 22:14-20.) Cruz was concerned that the male work crew may take tools from the tool cart to use as weapons, pass tools or other contraband to the female inmates, or get into a fight. (Id. 24:19-24.)

Plaintiff places much emphasis on Cruz's statements that he had been told not to go into any room "off camera" with a female inmate, and that he would not have gone into the closet alone with a female inmate. (Opp'n at 7.) Nevertheless, Cruz testified that the recommendation to not go into any room "off camera" with a female inmate was only a "strong suggestion" and not a rule, regulation, or policy. (Cruz Dep. 13:11-19, 17:15-20, 25:13-19.) He testified that he left Plaintiff under the supervision of Milsap, who as a BOP employee, underwent the same training he did. (Id. 25:15-17, 49:4-9.) He testified that while he was employed, he never heard of any incidents of sexual misconduct by male employees toward female inmates. (Id. 12:19-22, 13:2-5, 40:7-11, 40:17-41:5, 41:14-42:4.) He testified that he did not believe that allowing Plaintiff and Milsap to go into the closet alone was inappropriate or that it would place Plaintiff at risk of harm. (Id. 17:9-10, 17:15-20, 25:10-13, 25:24-26:2, 35:22-25.)

"Deliberate indifference is a high legal standard." Toguchi, 391 F.3d at 1060. The subjective prong "focuses only 'on what a defendant's mental attitude actually was.'" Id. at 1057 (quoting Farmer, 511 U.S. at 839). Here, there

is no evidence that Cruz knew of and disregarded a substantial risk of serious harm to Plaintiff's safety. <u>Farmer</u>, 511 U.S. at 837. Even if the argument could be made that Cruz should have been aware of such a risk, because he was not, he did not violate the Eighth Amendment. <u>Toguchi</u>, 391 F.3d at 1057 (quoting <u>Gibson</u>, 290 F.3d at 1188). Accordingly, the Court GRANTS summary judgment in favor of Cruz and against Plaintiff on her <u>Bivens</u> claim for violation of her Eighth Amendment rights.

    2.    <u>Bivens claims against the United States</u>

In her memorandum in opposition, Plaintiff argues that Defendants' motion mischaracterizes the claims asserted in Counts II through VI. (Opp'n at 8-9.) Plaintiff argues that these counts are based upon alleged violations of her federal constitutional rights. (<u>Id.</u>) The Court, however, notes that these counts are brought only against the United States. (SAC ¶¶ 24, 26, 28, 30, 32; <u>see also</u> Doc. # 77 at 2.) <u>Bivens</u> claims are not available against the United States or agencies of the United States. <u>FDIC v. Meyer</u>, 510 U.S. 471, 486 (1994); <u>Cato v. United States</u>, 70 F.3d 1103, 1110 (9th Cir. 1995). Thus, to the extent Plaintiff is asking the Court to construe Counts II through VI as claims against the United States for alleged violations of her constitutional rights, such claims are DISMISSED.

## C.  Remaining Claim (Count VII)

Count VII asserts a claim against the United States for "negligently caus[ing] Plaintiff to sustain serious emotional distress . . . ."  (SAC ¶ 34.) Defendants contend that this count is not an independent cause of action, but rather, a claim for damages.  (Mem. in Supp. of Mot. at 16; Reply at 13.) Defendants contend that should the Court dismiss all other counts against the United States, Count VII must also be dismissed.  (Mem. in Supp. of Mot. at 16; Reply at 13.)  Plaintiff does not dispute Defendants' contentions.  The Court therefore construes Count VII as a claim for damages and dismisses this count on the ground that there are no remaining claims against the United States. Accordingly, Defendants' motion is GRANTED with respect to Count VII.

## CONCLUSION

For the reasons stated above, Defendants' Motion to Dismiss Plaintiff's SAC is GRANTED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, January 24, 2011.

  /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Jane Doe v. United States of America, et al.; Civ. No. 08-00517 BMK; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT.