IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| JANE DOE, | ) | CV. NO. 08-00517 BMK |
| | ) | |
| Plaintiff, | ) | ORDER DENYING PLAINTIFF'S |
| | ) | MOTION FOR |
| vs. | ) | RECONSIDERATION OF ORDER |
| | ) | GRANTING DEFENDANTS' |
| UNITED STATES OF AMERICA; | ) | MOTION TO DISMISS |
| JEFFREY KALANI CRUZ; and | ) | PLAINTIFF'S SECOND |
| DOE DEFENDANTS 1-10, | ) | AMENDED COMPLAINT AND |
| | ) | JUDGMENT IN A CIVIL CASE, |
| Defendants. | ) | AND FOR LEAVE TO FILE A |
| | ) | THIRD AMENDED COMPLAINT |
| _____ | ) | |

ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF
ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S
SECOND AMENDED COMPLAINT AND JUDGMENT IN A CIVIL CASE,
AND FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT

Before the Court is Plaintiff Jane Doe's ("Plaintiff") Motion for Reconsideration of Order Granting Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint and Judgment in a Civil Case, and for Leave to File a Third Amended Complaint ("Motion for Reconsideration and for Leave to Amend"). (Doc. # 99.) Pursuant to Local Rule 7.2(d) of the Local Rules of Practice of the United States District Court for the District of Hawaii, the Court elects to decide this matter without a hearing. After careful consideration of the motion, and the supporting and opposing memoranda, the Court DENIES

Plaintiff's Motion for Reconsideration and for Leave to Amend.

BACKGROUND

The parties are familiar with the facts of this case. The Court, nevertheless, repeats those facts that are necessary for a decision on the instant motion.

I.  Background Facts

This action arises out of a sexual assault on Plaintiff while she was an inmate at the Federal Detention Center in Honolulu, Hawaii ("FDC"). (SAC ¶¶ 5, 14.) The sexual assault was committed by Markell Milsap, who was employed as an electrician by the United States of America ("United States") and the Federal Bureau of Prisons ("BOP"). (Id. ¶¶ 6, 14.) Plaintiff filed a complaint against Milsap and the United States on November 18, 2008. (Doc. # 1.) On September 18, 2009, Plaintiff and Milsap entered into a settlement and release agreement. (Doc. # 36 at 9-10.) Milsap was dismissed from the action pursuant to a stipulation for dismissal filed on November 12, 2009. (Doc. # 35.)

II.  The United States' Motion to Dismiss

On February 26, 2010, the United States moved to dismiss the remaining claims in the action pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. # 48.) The remaining claims were against

the United States for the following: the conduct of Milsap while he was acting within the scope of his employment (Count I); negligent supervision of Milsap (Count II); negligent hiring and/or retention of Milsap (Count III); negligent supervision of the inmate population (Count IV); negligent failure to equip and staff the FDC (Count V); and negligent infliction of emotional distress (Count IX).

The Court heard the United States' motion to dismiss on April 15, 2010. (Doc. # 52.) On May 10, 2010, the Court issued an order granting the motion to dismiss. (Doc. # 55.) Specifically, the Court dismissed Count I for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (Id. at 18.) The Court concluded that under the Federal Tort Claims Act ("FTCA"), the United States is not liable for Milsap's commission of sexual assault, because such conduct was outside the scope of his employment. (Id. at 6-8.) The Court also dismissed Count V for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (Id. at 18.) The Court concluded that decisions relating to equipping and staffing the FDC are barred by the discretionary function exception to the FTCA. (Id. at 8-14.) The Court then dismissed Count II (negligent supervision of Milsap), Count III (negligent hiring and/or retention of Milsap), and Count IV (negligent supervision of the inmate population) for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6). (Id. at 18.) The Court noted that in

order to survive a Rule 12(b)(6) motion to dismiss, Plaintiff's complaint must contain "enough facts to state a claim to relief that is plausible on its face." (Id. at 14-17 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)) (quotation marks omitted).) Lastly, because Plaintiff did not dispute the United States' argument that Count IX was a claim for damages rather than an independent cause of action, the Court dismissed this count because all other claims against the United States were dismissed. (Id. at 17-18.) The Court, however, granted Plaintiff leave to amend her complaint. (Id. at 18.)

III.  Plaintiff's Amended Complaint

Plaintiff amended her complaint on May 25, 2010. (Doc. # 56.) On October 22, 2010, the parties stipulated to the filing of a second amended complaint ("SAC"). (Doc. # 77.) The SAC named as Defendants, the United States and Jeffrey Kalani Cruz (collectively "Defendants"). (SAC ¶¶ 2, 3.) Cruz was employed as an officer by the United States and the BOP at the time of the sexual assault. (Id. ¶¶ 3, 6.) The SAC asserted seven claims against Defendants. Count I asserted a Bivens claim against Cruz for violation of Plaintiff's Eighth Amendment rights. (Id. ¶ 22.) Counts II through VII asserted claims against the United States for the following: negligent hiring, training, and/or retention of Milsap (Count II); negligent supervision of Milsap (Count III); negligent hiring,

4

training, and/or retention of Cruz (Count IV); negligent supervision of Cruz (Count V); negligent supervision of the inmate population (Count VI); and negligent infliction of emotional distress (Count VII). (Id. ¶¶ 24, 26, 28, 30, 32, 34.)

IV.   Defendants' Motion to Dismiss

On November 5, 2010, Defendants moved to dismiss Plaintiff's SAC pursuant to Rules 12(b)(1) and 12(b)(6), which Plaintiff opposed. (Docs. ## 79, 87.) Plaintiff attached as exhibits to her opposition excerpts from, among other things, a transcript of the Federal Bureau of Investigation's ("FBI") interview of Cruz and the BOP Program Statement's Standards of Employee Conduct ("Program Statement"). (Doc. # 87 Exs. 2 & 3.) The parties later stipulated to the Court's consideration of the deposition testimony of Cruz, Milsap, and Plaintiff when deciding Defendants' motion to dismiss. (Doc. # 92.)

The Court heard Defendants' motion to dismiss on January 7, 2011. (Doc. # 94.) At the hearing, the Court took Defendants' motion to dismiss under advisement. (See id.) The Court issued an order granting the motion to dismiss on January 24, 2011. (Doc. # 96.) Specifically, the Court dismissed Count III (negligent supervision of Milsap), Count V (negligent supervision of Cruz), and Count VI (negligent supervision of the inmate population) for lack of subject

matter jurisdiction pursuant to Rule 12(b)(1). (Id. at 12-16.) The Court concluded that decisions relating to the supervision of employees and inmates are barred by the discretionary function exception to the FTCA. (Id.) The Court also dismissed Counts II and IV (negligent hiring, training, and/or retention of Milsap and Cruz) for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). (Id. at 16-17.) Although Defendants did not raise the issue of subject matter jurisdiction with respect to these counts, the Court concluded that decisions relating to the hiring, training, and retention of employees also fall within the discretionary function exception. (Id.) Lastly, the Court, relying on the evidence submitted by the parties, converted Defendants' Rule 12(b)(6) motion to dismiss Count I (Bivens claim against Cruz) to a motion for summary judgment. (Id. at 20.) The Court granted Defendants summary judgment because there is no indication that Cruz was deliberately indifferent to a substantial risk of serious harm to Plaintiff in violation of her Eighth Amendment rights. (Id. at 18-26.) The Court again dismissed Count VII because Plaintiff did not dispute that this count was a claim for damages rather than an independent cause of action. (Id. at 27.)

On January 27, 2011, judgment was entered in favor of Defendants and against Plaintiff pursuant to the Court's order granting Defendants' motion to dismiss. (Doc. # 97.)

6

V.  Plaintiff's Motion for Reconsideration and for Leave to Amend

On February 3, 2011, Plaintiff filed the instant motion, requesting the Court to reconsider its order granting Defendants' motion to dismiss. (Doc. # 99.) Plaintiff argues that pursuant to Rule 60(b)(6) of the Federal Rules of Civil Procedure, reconsideration is appropriate because (1) at the hearing on Defendants' motion to dismiss, defense counsel admitted that Cruz was negligent, and (2) she retained an expert, Wendy S. Still, M.A.S., who prepared a report prior to her expert witness disclosure deadline, which supports her claims against Defendants. (Mem. in Supp. of Mot. at 3-7.) Plaintiff attached Still's report, dated January 21, 2011, to her motion. (Mot. Ex. 2.) The parties had stipulated that Plaintiff's expert witness disclosure deadline be extended to January 28, 2011. (Doc. # 90.)

In her report, Still states that she was retained as an expert on "women offenders, gender responsive strategies for female prisoners, prison rape elimination and sexual assault prevention of female prisoners in detention." (Still Decl. ¶ 1; Mot. Ex. 2 at 3.) Still states that her report addresses the following:

> Did Defendants the [United States] and [Cruz], fail to protect [Plaintiff] from sexual assault by [Milsap] at the [FDC] on September 28, 2007 and violate her constitutional rights? Additionally, did Defendants Cruz and the [United States] through the [BOP] know or should they have known of the risks of unsupervised inmates and employees being permitted into

7

> locked rooms that would lead to the endangerment and sexual assault of [Plaintiff]? Did the [United States] through the [BOP] negligently supervise the inmate population to the detriment of ensuring inmate safety and fail to take the proper steps in hiring, training and supervising either BOP employee [Milsap] or [Cruz]?

(Mot. Ex. 2 at 3-4.) Still bases her opinions primarily on the Prison Rape Elimination Act ("PREA"). (See id. at 7-11, 17-18.) She states that the purposes of the PREA are to:

> (1) establish a zero-tolerance standard for the incidence of prison rape in prisons in the United States; (2) make the prevention of prison rape a top priority in each prison system; (3) develop and implement national standards for the detection, prevention, reduction, and punishment of prison rape; . . . (6) increase the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape; (7) protect the Eighth Amendment rights of Federal, State, and local prisoners . . . .

(Id. at 7-8 (quoting 42 U.S.C. § 15602) (quotation marks omitted).) Still states that the PREA established a National Prison Rape Elimination Commission ("Commission") to study the impacts of prison rape, and prepare a report that includes, among other things, the Commission's findings and conclusions, as well as recommended national standards for reducing prison rape. (Id. at 8-9 (citing 42 U.S.C. § 15606(d)).) Still notes that under the PREA, the Commission is required to submit the report to the Attorney General and others. (Id. (citing 42 U.S.C. § 15606(d)(3)(A)).) She notes that not later than one year after receiving the

8

report, the Attorney General is required to publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape ("final rule"). (Id. at 9 (citing 42 U.S.C. § 15607(a)(1)).)

Still notes that the Commission submitted the report to the Attorney General in 2009. (Id.) She notes that the Attorney General issued proposed national standards, or a draft final rule ("draft final rule"), which includes the following:

> **§ 115.13    Supervision and monitoring.**
> (a)    For each facility, the agency shall determine the adequate levels of staffing, and, where applicable, video monitoring, to protect inmates against sexual abuse. In calculating such levels, agencies shall take into consideration the physical layout of each facility, the composition of the inmate population, and any other relevant factors.
> (b)    The facility shall also establish a plan for how to conduct staffing and, where applicable, video monitoring, in circumstances where the levels established in paragraph (a) of this section are not attained.
> (c)    Each year, the facility shall assess, and determine whether adjustments are needed to:
> >    (1)    The staffing levels established pursuant to paragraph (a) of this section;
> >    (2)    Prevailing staffing patterns; and
> >    (3)    The agency's deployment of video monitoring systems and other technologies.
> (d)    Each prison facility, and each jail facility whose rated capacity exceeds 500 inmates, shall implement a policy and practice of having intermediate-level or higher-level supervisors conduct and document unannounced rounds to identify and deter staff sexual abuse and sexual harassment. Such policy and practice shall be implemented for night shifts as well as day

shifts.

(Id. at 9-10.)  Still notes that the final rule is overdue and remains pending.  (Id. at 9.)  She notes that in the interim, organizations receiving federal grants that are responsible for the accreditation of federal prisons are required to have in effect for each facility, accreditation standards for the detection, prevention, reduction, and punishment of prison rape.  (Id. (citing 42 U.S.C. § 15608).)

Based on the foregoing, Still's opinions are as follows:

> It is this expert's preliminary opinion based on the documents reviewed . . . including depositions, training curriculum, the [BOP] and local institutional policies and other materials that the [United States] and [Cruz] breached a clearly established duty to protect [Plaintiff] by failing to protect [her] from sexual assault as mandated by the [PREA].  It is also this expert's opinion that the BOP and Institutional Management did not protect [Plaintiff's] constitutional rights as required by the PREA . . . .  The institutional conditions clearly created an environment that placed the health and safety of [Plaintiff] at risk of sexual assault because institutional management failed to appropriately supervise and monitor [her] safety by failing to address the blind spots in the storage room with technology (cameras) or physical plant modifications.  [Cruz] failed to uphold his sworn oath to protect [Plaintiff] when he allowed her to enter the storage room unsupervised with Milsap who then sexually assaulted [Plaintiff].

(Id. at 18.)

In addition to her request for reconsideration, Plaintiff requests leave to file a third amended complaint.  (Mot. at 2.)  Specifically, Plaintiff seeks leave to

amend her claim for negligent supervision of the inmate population.  (See Mem. in Supp. of Mot. at 7-8.)  Plaintiff attached to her motion, her proposed Third Amended Complaint ("TAC").  (Mot. Ex. 1.)  The proposed TAC alleges that Defendants "breached their duty to provide a safe and secure environment" (Count I), "negligently caused Plaintiff to be in a situation where she was sexually assaulted" (Count II), and "negligently caused Plaintiff to sustain serious emotional distress" (Count III).  (Id.)  The Court addresses Plaintiff's requests in turn.

## DISCUSSION

Plaintiff requests the Court to reconsider its order granting Defendants' motion to dismiss pursuant to Rule 60(b)(6).  (Mot. at 2; Mem. in Supp. of Mot. at 4-5.)  A motion for reconsideration that is filed within ten days of entry of judgment is treated as a motion to alter or amend judgment under Rule 59(e).  Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp., 248 F.3d 892, 899 (9th Cir. 2001).  "Otherwise, it is treated as a Rule 60(b) motion for relief from a judgment or order."  Id.  Because Plaintiff's motion for reconsideration was filed within ten days after entry of judgment, the Court will treat it as a Rule 59(e) motion.

"Under Rule 59(e), a motion for reconsideration should not be granted, absent highly unusual circumstances, unless the district court [1] is

presented with newly discovered evidence, [2] committed clear error, or [3] if there is an intervening change in the controlling law." 389 Orange St. Partners v. Arnold, 179 F.3d 656, 665 (9th Cir. 1999) (citing Sch. Dist. No. 1J v. AcandS, Inc., 5 F.3d 1255, 1263 (9th Cir. 1993)). In this case, Plaintiff appears to argue that reconsideration should be granted under the first ground. Specifically, Plaintiff argues that reconsideration is warranted in light of (1) defense counsel's admission that Cruz was negligent, and (2) Still's report. (Mem. in Supp. of Mot. at 5-7.)

First, Plaintiff is incorrect that defense counsel admitted, at the hearing on Defendants' motion to dismiss, that Cruz was negligent. In fact, defense counsel stated that Defendants "do not concede" that Cruz was negligent. Defense counsel, however, stated that even if Cruz was negligent, negligence is insufficient to state an Eighth Amendment Bivens claim against him.

Second, as to Still's report, the Court concludes that the report does not constitute "newly discovered evidence" within the meaning of Rule 59(e). To prevail on a Rule 59(e) motion because of newly discovered evidence, the movant must show that she "exercised 'due diligence' to discover [the] evidence," and the evidence is "of such magnitude that production of it earlier would have been likely to change the disposition of the case." Coastal Transfer Co. v. Toyota Motor Sales,

833 F.2d 208, 211 (9th Cir. 1987). In this case, Plaintiff has not shown that she exercised due diligence to discover the evidence. Plaintiff commenced this action more than two years ago. (See Doc. # 1.) The United States filed its motion to dismiss early last year. (Doc. # 48.) In granting the United States' motion to dismiss, the Court set forth the law governing the discretionary function exception. (Doc. # 55 at 9-14.) The Court also instructed Plaintiff that in order to survive a motion to dismiss, her complaint "must contain 'enough facts to state a claim to relief that is plausible on its face.'" (Id. at 15 (quoting Twombly, 550 U.S. at 570).) The Court granted Plaintiff leave to amend her complaint. (Id. at 18.) Shortly thereafter, Plaintiff filed an amended complaint. (Doc. # 56.) On October 22, 2010, the parties stipulated to the filing of a second amended complaint. (Doc. # 77.) Plaintiff filed her SAC the following month, and Defendants filed their motion to dismiss. (Docs. ## 78, 79.) In opposing Defendants' motion to dismiss, Plaintiff raised many of the same arguments she raised when opposing the United States' motion to dismiss. Plaintiff may not use the rules for reconsideration as means to reargue her case. See, e.g., Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co., 571 F.3d 873, 880 (9th Cir. 2009) ("A motion for reconsideration 'may *not* be used to raise arguments or present evidence for the first time when they could reasonably have been raised

earlier in the litigation.'") (emphasis in original, citation omitted); Strobel v. Morgan Stanley Dean Witter, No. 04CV1069 BEN(BLM), 2007 WL 1053454, at *3 (S.D. Cal. Apr. 10, 2007) (noting that "the Rules allowing for motions for reconsideration are not intended to provide litigants with a second bite at the apple"); United States v. Westlands Water Dist., 134 F. Supp. 2d 1111, 1131 (E.D. Cal. 2001) ("A motion for reconsideration is not a vehicle to reargue the motion or to present evidence which should have been raised before.") (citation and quotation marks omitted).

Additionally, Plaintiff has not shown that the evidence is "of such magnitude that production of it earlier would have been likely to change the disposition of the case." Coastal Transfer Co., 833 F.2d at 211. As the Court previously explained, the "United States, as sovereign, can only be sued to the extent it has waived its sovereign immunity." Vacek v. U.S. Postal Serv., 447 F.3d 1248, 1250 (9th Cir. 2006). Although the FTCA authorizes suits against the Government for personal injury caused by the negligence of its employees while acting within the scope of their employment, such waiver is limited by the discretionary function exception. Alfrey v. United States, 276 F.3d 557, 561 (9th Cir. 2002) (citations omitted). To determine whether the discretionary function exception bars a particular claim, the court must apply a two-part test. Id.

14

(citing Sigman v. United States, 217 F.3d 785, 793 (9th Cir. 2000)). First, the court must decide "whether the challenged conduct is discretionary, that is, whether it 'involv[es] an element of judgment or choice.'" Id. (quoting Fang v. United States, 140 F.3d 1238, 1241 (9th Cir. 1998)) (alteration in original). This requirement is not met if "a federal statute, regulation or policy *specifically prescribes* a course of action for an employee to follow." Id. (quoting Fang, 140 F.3d at 1241) (emphasis added, quotation marks omitted). Second, if the challenged conduct is discretionary, the court "must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." Id. (quoting Berkovitz v. United States, 486 U.S. 531, 536 (1988)) (quotation marks omitted).

Plaintiff argues that Still's report supports her claim of negligent supervision of the inmate population because Still concluded that:

> (1) Defendants[1] "breached a clearly established duty to protect [Plaintiff] by failing to protect [her] from sexual assault as mandated by [the PREA]"; (2) Defendants "did not protect

---

[1] To the extent Plaintiff attempts to use Still's report to support claims of negligence against Cruz, the FTCA provides the exclusive remedy for "personal injury . . . arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment . . . ." 28 U.S.C. § 2679(b)(1). In an FTCA action, the United States is the only proper defendant. Kennedy v. U.S. Postal Serv., 145 F.3d 1077, 1078 (9th Cir. 1998).

> [Plaintiff's] constitutional rights as required by [the PREA]";
> and (3) "institutional conditions clearly created an environment
> that placed the health and safety of [Plaintiff] at risk of sexual
> assault because institutional management failed to appropriately
> supervise and monitor [her] safety by failing to address the
> blind spots in the storage room with technology (cameras) or
> physical plant modifications."

(Mem. in Supp. of Mot. at 5-6 (quoting Mot. Ex. 2 at 18) (some alterations in original, footnote added).) Plaintiff notes that Still's conclusions are based on the PREA, which Still stated is intended to:

> (1) establish a zero-tolerance standard for the incidence of
> prison rape in prisons in the United States; (2) make the
> prevention of prison rape a top priority in each prison system;
> (3) develop and implement national standards for the detection,
> prevention, reduction, and punishment of prison rape; . . . (6)
> increase the accountability of prison officials who fail to detect,
> prevent, reduce, and punish prison rape; (7) protect the Eighth
> Amendment rights of Federal, State, and local prisoners . . . .

(See id. at 6 (quoting Mot. Ex. 2 at 7-8) (quotation marks omitted).) However, the PREA does not direct the manner in which Defendants must fulfill these goals. Instead, the PREA directs the Commission to recommend national standards for reducing prison rape, and it directs the Attorney General to publish a final rule adopting national standards for the detection, prevention, reduction, and punishment of prison rape. See 42 U.S.C. § 15606(d); 42 U.S.C. § 15607(a)(1). To date, the Attorney General has not published the final rule, but only a draft final rule. (See Mot. Ex. 2 at 9.) Furthermore, the section of the draft final rule to

which Still cites, appears to be discretionary. This section states:

> **§ 115.13   Supervision and monitoring.**
> (a)   For each facility, the agency shall determine the adequate levels of staffing, and, where applicable, video monitoring, to protect inmates against sexual abuse. In calculating such levels, agencies shall take into consideration the physical layout of each facility, the composition of the inmate population, and any other relevant factors.
> (b)   The facility shall also establish a plan for how to conduct staffing and, where applicable, video monitoring, in circumstances where the levels established in paragraph (a) of this section are not attained.
> (c)   Each year, the facility shall assess, and determine whether adjustments are needed to:
> > (1)   The staffing levels established pursuant to paragraph (a) of this section;
> > (2)   Prevailing staffing patterns; and
> > (3)   The agency's deployment of video monitoring systems and other technologies.
> (d)   Each prison facility, and each jail facility whose rated capacity exceeds 500 inmates, shall implement a policy and practice of having intermediate-level or higher-level supervisors conduct and document unannounced rounds to identify and deter staff sexual abuse and sexual harassment. Such policy and practice shall be implemented for night shifts as well as day shifts.

(Id. at 10.) Based on the foregoing, agencies and facilities appear to have discretion when making decisions as to staffing, video monitoring, and the like. Thus, Still's report does not point to a federal statute, regulation, or policy that is ***specific and mandatory*** as to inmate supervision. See Doe v. Holy See, 557 F.3d 1066, 1084 (9th Cir. 2009) (concluding that the plaintiff did not allege "the

17

existence of a policy that is 'specific and mandatory' on the [defendant]") (quoting Kennewick Irrigation Dist. v. United States, 880 F.2d 1018, 1026 (9th Cir. 1989)) (emphasis omitted).  Accordingly, even if Plaintiff had produced Still's report prior to the Court's order granting Defendants' motion to dismiss, the disposition of the case would have likely been the same.

The Court therefore DENIES Plaintiff's request to reconsider its order granting Defendants' motion to dismiss.  As such, Plaintiff's request for leave to file a third amended complaint is DENIED as moot.

CONCLUSION

For the reasons set forth above, the Court DENIES Plaintiff's Motion for Reconsideration and for Leave to Amend.

IT IS SO ORDERED.



  /S/ Barry M. Kurren
Barry M. Kurren
United States Magistrate Judge

Jane Doe v. United States of America, et al.; CV. NO. 08-00517 BMK; ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT AND JUDGMENT IN A CIVIL CASE, AND FOR LEAVE TO FILE A THIRD AMENDED COMPLAINT.